The next case for argument is 24-2330, Eagle View v. Nearmap. Good morning, Maid Police Court. Laura Vu on behalf of Eagle View. This appeal relates to errors in the board's secondary considerations analysis regarding the presumption of nexus and nexus in fact. For both, the board failed to consider the claimed invention as a whole and erroneously focused on only the printed matter limitation. You may say that, but when you say the board failed to consider as a whole, where does printed matter fit into that consideration as a whole? Under Praxair, printed matter doesn't have weight in the obviousness considerations and should be excluded from the obviousness analysis. When secondary considerations evidence related to printed matter is excluded, that should mean excluding printed matter for all aspects of secondary considerations. So that means presumption of nexus and co-extensiveness. Okay, so there's no dispute about that. I mean, I think that your friend would agree with you on the other side, that printed matter cannot be considered for any of the analysis here. I don't think that's quite right, because they're saying... I thought that's what you were saying, so please... Let me see if I understand the distinction here. You're saying once it's printed matter, it goes poof, it goes away. You pretend that the patent doesn't even have a printed matter limitation in it. You don't look at the presumption or nexus in fact with respect to having anything to do with printed matter. But it seems to me that the problem with that is that whether you call it the printed matter or just taking the patent as a whole, the success of the invention and the praise of the invention may all be directed to the printed matter, in which case you get no presumption and you get no nexus. That seems to me the flaw in the way you're characterizing the role that printed matter ought to play. So the difference between the scenario that you're presenting and this case here is that the secondary considerations evidence, the commercial success and the praise is not just directed to the printed matter. That may well be true, but what I'm trying to get at is there's this nice characterization that you start off the brief with and you repeat it a couple of times, that once you've taken printed matter out of the picture, you can't look at it with respect to the question of nexus. And it seems to me that's demonstrably wrong if in fact the nexus depends on the question of whether the printed matter or any other feature is really the source of the success and other secondary consideration benefits. Do you understand the problem I have with your presentation? Yes, and I agree that if the praise and the commercial success was exclusively tied to the printed matter, then under Praxair that evidence should not be considered. Where do you get exclusively? I mean if it counts for half of the commercial success or for three quarters or 99%? Sure, so I think looking at the evidence would be really helpful here. So if we turn to Appendix 1564, that is one of the exhibits of commercial success. And this exhibit attributes the commercial success to Eagle View's software. So the software is the product that implements the entire claimed invention, all the steps of the claimed invention. Is software claimed? So the claims are directed to a method and non-transitory. But if the software is what accounted for the commercial success, doesn't it have to be part of the claim? Well, it is because the claim is directed to non-transitory medium that implements this process, and so that would encompass the software. And the claims also are directed to the methods, and so the software performs the method, which is why it also. I don't read the claims as a claim over the software. So claim one says a computer implemented method of a roof estimate report. I don't dispute that software is used or involved, but I don't know that any particular software is claimed. Well, I mean, the software is typically claimed through the steps that the software performs. And so in this case, the steps of the method and the non-transitory computer-readable medium is directed to performing the steps of displaying aerial images of a roof and displaying and manipulating line drawings and generating a roof report. Let's go back to the question that we were dealing with. If the printed matter goes poof and it's gone, and the inventiveness and the innovation that drove commercial success was based on that printed matter, you no longer have an argument that the claims are co-extensive here, do you? Yes, that's right. That's right, you don't have an argument? Or are you just saying that they're just not co-extensive? I'm saying that legally, if the evidence was exclusively directed to printed matter and you don't consider the printed matter, then there would not be co-extensiveness legally. But in this case, one, that is not the case because the secondary considerations evidence is not exclusively related to the printed matter. It's related to the software that implements all of the claimed steps. But you raised the term exclusively again. And it seems to me that the law, as I read it, is sort of the flip side of that. It says that in order to be entitled to the presumption, at least speaking only to the presumption, the value of the patent vis-a-vis the success and praise has to be virtually exclusively from the subject matter that's in dispute, as opposed to the opposite. Did you follow that? That was a rather poorly put question. I think I follow, but our point is that the claim includes all the steps of display. The printed matter is a small portion of the claim. And so when the claim is directed to this entire multi-step process involved in generating the reports and the secondary considerations evidence is related to the software product that implements all those steps, it would be error to reduce the presumption of nexus inquiry to only the printed matter limitation. That's not the evidence that we relied on. But didn't the board say pretty much the opposite with respect to the importance of the printed matter? I mean, they say the evidence indicates that the report's content is important to the success of the products at issue and that patent owner base as much of his asserted commercial success and industry praise on it. So that is what the board said. That seems to be a problem for you unless you challenge that finding squarely. We did challenge that finding. We argued that substantial evidence doesn't support that finding. So your case comes down to a substantial evidence case with respect to that finding? If you disagree legally and believe that Fox Factory applies and that you shouldn't consider printed matter, then yes, the presumption of nexus argument would come down to a substantial evidence argument. But in this case, the board's findings are unsupported by substantial evidence because the board found that the patented invention would only be a component without the printed matter. And again, the patented invention is this multi-step process of displaying aerial images. Did the printed matter exist in the prior art? The printed matter, I think the board found or NIRMAP did show prior art that addresses the printed matter limitation, and we did not dispute that on appeal. And, I mean, the board relied on two things, the improved accuracy and saving time and money and reducing injury risk. So that relates to the nexus inquiry, which is a separate issue. So for consideration of the secondary considerations evidence under Fox Factory, you can either have a presumption of nexus or you can establish nexus in fact, which is a different inquiry that involves determining whether the secondary considerations evidence, the commercial success, the praise, is a direct result of the unique characteristics of the claimed invention. And that can't include printed matter. It cannot include printed matter, but the accuracy here is a result of the claimed process of displaying aerial images and displaying and manipulating the line drawings and generating the roof estimate report. But you agree with Judge Bryson that's substantial evidence? No, no. For the nexus argument, there are separate legal errors in the nexus argument. That does not come down to substantial evidence. Well, on the nexus argument, though, the board found that the patent owners' asserted advantages are tied to surveying a roof using photographs instead of manual measuring on site. That feature was clearly disclosed in the prior art. So that seems to me to be a problem for your nexus argument. So that's another legal error. But that's a finding. It is a finding. And so that's a legal error with respect to that finding only if there's no substantial evidence supporting it, right? No, no, no. That's not the case. Under the court's case law, even when there are prior art limitations in isolation, you can still consider nexus as it relates to the claimed invention as a whole. And so if the commercial success or the praise is directed to performing all the steps that are in the claims, you can still consider that benefit, that praise. Here it would be the praise related to reduced time and cost that is related to the claimed invention. Again, I think it would be helpful to look at the evidence to have a concrete example. At Appendix 1594. So at Appendix 1594, this is praise regarding Eagle View's software program. If we start at 1594, there's the third paragraph. It says, starting with Carlson's brother-in-law. And it continues on to say that Pershing set out to build a software program. I'm sorry, which paragraph? It's the third paragraph. Towards the end of the first sentence, it says Pershing set out to build a software program that would change the roofing industry. In the next sentence, it says that that company uses aerial photography and 3D modeling to produce on-demand reports for accurate measurements. And so this praise of accurate measurements, and then it continues on to say that it improves on, you know, there's no perilous time-consuming estimates, that's a separate benefit of reduced cost and injury risk. Those benefits flow from the software performing the aerial photography and 3D modeling and generating the report. But how do you think that this, I don't know how to characterize it, it's a three-page, looks like an industry publication of some sort. How does that overcome the board's finding that the prior art references, which were, I don't remember the names, the three prior art references ending with Heaton, show the exact same thing? So here, I'm looking at Appendix 33, where the last paragraph in the board's analysis where they are addressing the benefits of the reduced time and cost and saying that those advantages are already in the prior art, the board is exclusively talking about surveying a roof using photographs. So that's only one aspect of the claimed invention. Right, but that's one of the aspects that this little festschrift, really, says was brand new. I would think that we would take the board's word for it ahead of this piece of evidence. Here, the board was improperly looking at a prior art feature being disclosed in a reference in isolation. For Nexus, the board still needed to consider the claimed invention as a whole and look at how the commercial success and praise is directed to all the claimed steps. The court's WBIP case squarely addresses that issue. It says that even when you have an isolated feature that's present in the prior art, that doesn't make the secondary considerations of evidence related to that feature irrelevant when you're looking at the claimed combination. Good morning, Your Honors, and may it please the Court. Jennifer Wu for NIRMAP. Your Honors correctly pointed out that one of the issues in this case is whether the board's decision was supported by substantial evidence. And the only challenge here is on the Nexus finding. The board correctly found that all of the elements in the claim were in the prior art. Your Honor mentioned it'd be Heller, Quam, and Deaton. Those are the two that I could not remember. And that is not being challenged here. The question presented by our friends on the other side is whether secondary considerations, and specifically the presumption, can save this claim from obviousness, even though the only evidence submitted by appellants relates to the report's contents, the measurements. Even in the evidence- Is it your understanding that the other side had agreed that printed matter could not be considered? It's my understanding. What I just heard right now is that printed matter cannot be considered in the discussion of presumption of Nexus, as well as Nexus in fact. But it's not a caveat. But your friend also used the word exclusively at least three times. Which is a new argument that I think I didn't appreciate until I was sitting here. But I think what our friends are trying to say is that the evidence could be reweighed to be directed to other elements of the claim beyond the printed matter. But what the board found was that the evidence of secondary considerations all related to the roof report content. That is the measurements. But is exclusively the correct test? No. For printed matter. I mean, printed matter can't be used. It goes poof. Right. It doesn't come back in some sort of- Come back as long as it's not exclusive. Or if it's not exclusive. Right. And I think one of the things that is the problem with their argument is that I think appellants don't acknowledge it's their burden to prove Nexus. And so they need to come forth with evidence that shows the presumption of Nexus. When the printed matter goes poof, it can't come back and then prove the existence of Nexus. When you say it goes poof, it doesn't go poof for purposes of deciding whether the invention is really entitled- whether it's coterminous in effect with the product in question. Right. Because it may be that the attractiveness, the success, the praise is all attributed to the printed matter. And if that's true, there's no poof. It's there for purposes of deciding whether there's a presumption or even factual Nexus, right?  And when we say poof, I mean it's not patent eligible subject matter. Right. But the argument that your friend was making is that it goes poof for both purposes. Therefore, if you can't consider it for patentability, you also can't consider it for Nexus. And that seemed to me to be wrong. I think that's wrong. And if you look at Praxair, I think what the court said there was that what goes poof is it has no patentable weight. I think the sentence is no patentable weight means no patentable weight. So poof- If there's no patentable weight, then you can't show coextensiveness, right? Correct. And I think there's a distinction between it's erased entirely from the analysis and that it's not given patentable weight. I think no patentable weight means that the printed matter can't provide the hook to rescue the claim from obviousness if the evidence of secondary considerations is all tied to that printed matter. And just to understand how we kind of got to this convoluted spot of why are we arguing about the scope of the printed matter and whether the evidence is tied there is before the board, NIRMAP actually argued that the accuracy and quality were unclaimed and not part of printed matter. It was actually Eagleview on the other side who argued that accuracy and quality are part of the printed matter limitation because they wanted- I think they saw some benefit in that from the obviousness analysis. Having made that argument that the printed matter limitation encompasses accuracy and quality and having only submitted evidence relating really to accuracy and quality, I don't think they can kind of back out of that position. That's how we ended up here. It's all about software, right? I think we disagree that the claim is all about software. If you look at- Or the praise is the praise. The praise is very clear. It's very- if you look at, for example, APPX 1561, which is Eagleview's own case study. This is Exhibit 1020 in the- before the board, but 1561 is the appendix number here. There's a discussion here that the product that Eagleview is selling has cost efficiency. And Eagleview cites to this repeatedly. But if you look on page 1561 in the third paragraph on the left side, there's a sentence that says, accuracy is a critical factor in the cost equation. So the benefits that they're citing that they say are not accuracy and quality, if you read the actual evidence, the board correctly and properly weighed this evidence and determined that the evidence all relates to accuracy and quality. I'm just going to hear about 1564.  So 1564, the bit that I think that was cited in their brief is the fact that Eagleview, you know, had revenue growth, had commercial success. And if you look at- on the right side of the page 1565, there's a discussion of, well, you know, on 1564, it's a discussion that they made a lot of money. But it doesn't tie it to a specific product per se. And on the right side, what it says is that Eagleview's patented technology and methods provide detailed, accurate measurements. Detailed, accurate measurements, that's the roof report content. That's the printed matter. This is the material from their blog. This is from their blog, and importantly, it's from 2012. It's actually before this patent ever issued. And if you look at their other evidence, for example, I think the one- there's a couple more of them where they mention patents, even from their own blogs. But they have relied on the same secondary considerations for all of their patents, the first one issued in 2011 onward. And that gets at the Fox Factory point that this court made, is you can't have a generalized comparison of the product and the patent to create co-extensiveness. What if we were to conclude that the report either was not printed matter or was functionally related to the rest of the patent and therefore didn't get disqualified because of the printed matter? What would your view of this case be with respect to what's left of what the board's analysis was? Correct. So if the printed matter were not printed matter and we were to consider it, I think what we would look at then is whether or not there's actually a connection between that printed matter in the evidence and whether or not it's in the prior art. I think the rebuttable presumption might apply, and then you look at the evidence as to whether or not what's driving the success is actually what was not known in the prior art. In order to prove a nexus, you can't rely on something that was known. It has to be novel and claimed. So if the three prior art references that are relied on by the board were sufficient to undermine the argument that success and praise were directed to whatever is novel, let's say the report, then there would be no presumption, or at least there would be no finding of nexus. There would be no finding of nexus. But I think it's important that when, so in this case there was a director review, one of the questions that the director asked was to address whether this limitation was printed matter, and Eagle View conceded that point by not arguing that it wasn't. So I appreciate the hypothetical. Here I think there's no dispute that that limitation is printed matter, I think, and because of that. But even if it were not printed matter, there would be no nexus because that element is known in the prior art. Unless Your Honor has further questions, we respectfully request that the court affirm the board's decision. Thank you. Judge Bryson, I just wanted to clarify something about Appendix 1564. I know it's a posting on Eagle View's blog, but it's actually Ink Magazine ranked Eagle View as number 13 in the software category, and so this blog is just- Could you speak up just a little bit? Sorry, Judge Rena. It's Ink Magazine that ranked Eagle View software as number 13 in the software category. So it was external praise. It wasn't just Eagle View self-touting its software. I see. So the court's case law does permit consideration of benefits that flow from the remaining elements of the claimed invention. Rambis is directly on point to this case. In Rambis, the board had found that there was no nexus because the praise was related to high-speed data transfer, which was not recited in the claims. And the court said that the board's nexus analysis was wrong because even though the high-speed data transfer wasn't explicitly claimed, it flowed from a claimed feature, and so there was a nexus. And so as it applies to this case, the benefits of accuracy and reduced time and cost, the evidence shows that it flowed from the claimed steps of displaying aerial images and displaying and manipulating line drawings and generating a roof estimate report, and the board did not consider how the claimed combination enables the benefits in considering nexus. What is your answer to the argument or the point made by the board that the three prior art references in dispute really do encompass all of those features? So the response is WBIP and Chamorros, which says that even though prior art elements may be found in isolation in the prior art, if the inventive combination is what is novel, and there is praise and commercial success related to the inventive combination, you can still consider that as part of the nexus inquiry. Well, that might be so in general, but here the board specifically found, as I read it at Appendix 29, that the combination of those prior art references would have been obvious. Sorry, Appendix 29? 29, at the end of the first full paragraph. At least that seems to be what they're saying. The end of the first full paragraph? Appendix 29. Is that in light of the Petitioner's increased utility rationale? Right. So we read that to be part of the board's analysis of the prior art and not its consideration. Right, but it's pretty important, is it not, that after analyzing the prior art, they came to the conclusion that the combination would have rendered the invention obvious, and that there would have been a motivation to combine it. So when considering obviousness, you weigh the evidence of obviousness against the evidence of non-obviousness, and so this analysis relates to the evidence of non-obviousness, and it does not address the errors in the board's obviousness determination, but does not address the errors in the board's non-obviousness analysis related to this combination of features, which appears at Appendix 33. Okay. Any further? No. We respectfully ask the court to vacate and remand the board's opinion. Thank you.